CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

August 06, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Hannah Warren**
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **NICHOLAS J. COKAS,** | * |
| 3170 Berry Lane, Apt. 144 | * |
| Roanoke, Virginia 24018 | * |
| | * |
| Plaintiff, | *     Civil Action No. 7:26-cv-_629_____ |
| | * |
| v. | * |
| | * |
| **CREDIT CONTROL, LLC,** | * |
| 3300 Rider Trail South, Suite 500 | * |
| Earth City, Missouri 63045 | * |
| | * |
| Defendant. | * |

**COMPLAINT**

Plaintiff Nicholas J. Cokas, by counsel, complains against Defendant Credit Control, LLC as follows:

**INTRODUCTION**

1.  The facts contained in the instant Complaint concern a debt collector that mailed five separate written collection demands directly to a consumer it knew to be represented by counsel.

2.  This is an action for actual damages, statutory damages, costs, and attorneys' fees for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and its implementing regulation, Regulation F, 12 C.F.R. Part 1006.

3.  This is also a request for declaratory, equitable, and injunctive relief.

**PARTIES**

At the times herein mentioned:

4.  Plaintiff Nicholas J. Cokas (hereinafter "the Plaintiff") was and is a natural person, a citizen and resident of the City of Roanoke, Commonwealth of Virginia.

1

5. The Plaintiff is a "consumer" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(3).

6. The Plaintiff is a senior citizen whose sole source of income consists of federally protected retirement benefits.

7. Defendant Credit Control, LLC (hereinafter "Credit Control") is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located at 3300 Rider Trail South, Suite 500, Earth City, Missouri 63045, and a regional office located at 8001 Woodland Center Boulevard, Suite 200, Tampa, Florida 33614.

8. Credit Control, LLC is a company registered to do business in the Commonwealth of Virginia and maintains a registered agent in the Commonwealth.

9. Credit Control LLC operates a business the principal purpose of which is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Credit Control was and is a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

10. At all times relevant to this Complaint, Credit Control acted by and through its officers, employees, and agents, including Hays Roden, who identified himself as a "Collection Supervisor" of Credit Control and whose name and signature appear on each of the collection letters described below. Credit Control is liable for the acts and omissions of its officers, employees, and agents under the doctrine of *respondeat superior*.

## JURISDICTION AND VENUE

11. Jurisdiction of this action arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as the Plaintiff asserts claims against the Defendant for violation of the Fair Debt Collection Practices Act.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims transpired in this jurisdiction. Each of the collection communications at issue was directed by the Defendant into this District

2

and received by the Plaintiff at his residence in the City of Roanoke, Virginia. Venue is proper in the Roanoke Division under the General Rules of this Court.

## FACTS

### The Account

13.    The account that is the subject of this Complaint originated with Citibank, N.A. as a Macy's-branded consumer credit card account ending in the digits 1133 (the "Account").

14.    The Account was incurred primarily for personal, family, or household purposes and constitutes a "debt" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(5).

15.    The Account was thereafter placed with or assigned to Credit Control for collection. Credit Control assigned to the Account its own internal reference number TPA10788181 and asserted a balance due of $1,178.63.

16.    Credit Control attempted to collect the Account from the Plaintiff, including by mailing to the Plaintiff written solicitations offering to settle the Account for a payment of $471.45.

### Three Written Notices of Representation and Cease-and-Desist Demands

17.    Prior to any of the collection communications described below, the Plaintiff retained HELPS Law Group, P.C. ("HELPS") to represent him with respect to the Account and his other consumer debts.

18.    On the dates set forth below, Eric W. Olsen, Esq., of HELPS Law Group, P.C., transmitted three separate written notices to Credit Control at addresses identified on Credit Control's own correspondence. Each notice (a) confirmed that HELPS represented the Plaintiff with respect to the Account, (b) demanded that Credit Control cease all direct contact with the Plaintiff pursuant to 15 U.S.C. § 1692c(a)(2), and (c) advised that the Plaintiff survives on legally protected income and has no unprotected funds with which to satisfy the alleged debt.

a.     Letter dated February 5, 2026, from Eric W. Olsen, Esq., addressed to Credit Control, LLC, 8001 Woodland Center Blvd., Ste. 200, Tampa, Florida 33614. A true copy is attached as Exhibit A.

b.     Letter dated March 16, 2026, from Eric W. Olsen, Esq., addressed to Credit Control, LLC, P.O. Box 31179, Tampa, Florida 33631-3179, which states expressly: "This is a notice to cease and desist all communication with our client." A true copy is attached as Exhibit B.

c.     Letter dated April 10, 2026, from Eric W. Olsen, Esq., addressed to Credit Control, LLC, P.O. Box 31179, Tampa, Florida 33631-3179, again expressly demanding that Credit Control cease and desist all communication with the Plaintiff. A true copy is attached as Exhibit C.

19.     Each of the three HELPS letters identified the Plaintiff by name, identified the Account by Credit Control's own reference number TPA10788181, and stated the name and address of the Plaintiff's attorney.

20.     Credit Control has at no time contended, and cannot contend, that it did not receive the three HELPS letters.

21.     Neither HELPS nor any other counsel for the Plaintiff consented to direct communication between Credit Control and the Plaintiff, and neither failed to respond within a reasonable period of time to any communication from Credit Control.

22.     As of no later than February 5, 2026, Credit Control knew that the Plaintiff was represented by an attorney with respect to the Account and had knowledge of, and could readily ascertain, that attorney's name and address.

**Credit Control's Five Direct Communications with the Represented Plaintiff**

23.     Notwithstanding the three written notices described above, sent to two separate Credit Control addresses, Credit Control mailed written settlement solicitations directly to the Plaintiff at his residence in Roanoke, Virginia, on each of the following dates. Each solicitation bears Credit Control's reference number TPA10788181 and is signed by Hays Roden, Collection Supervisor:

a.  Letter dated March 8, 2026, demanding payment of $471.45 on or before March 22, 2026, mailed thirty-one (31) days after the February 5, 2026 notice of representation and cease demand. A true copy is attached as Exhibit D.

b.  Letter dated March 24, 2026, demanding payment of $471.45 on or before April 7, 2026, mailed forty-seven (47) days after the February 5, 2026 letter and eight (8) days after the March 16, 2026 cease-and-desist demand. A true copy is attached as Exhibit E.

c.  Letter dated April 14, 2026, demanding payment of $471.45 on or before April 28, 2026, mailed sixty-eight (68) days after the February 5, 2026 letter, twenty-nine (29) days after the March 16, 2026 letter, and four (4) days after the April 10, 2026 letter. A true copy is attached as Exhibit F.

d.  Letter dated May 5, 2026, demanding payment of $471.45 on or before May 19, 2026, mailed eighty-nine (89) days after the February 5, 2026 letter, fifty (50) days after the March 16, 2026 letter, and twenty-five (25) days after the April 10, 2026 letter. A true copy is attached as Exhibit G.

e.  Letter dated May 26, 2026, demanding payment of $471.45, mailed one hundred ten (110) days after the February 5, 2026 letter, seventy-one (71) days after the March 16, 2026 letter, and forty-six (46) days after the April 10, 2026 letter. A true copy is attached as Exhibit H.

24.  Each of the five letters described in the preceding paragraph was addressed and mailed directly to the Plaintiff at his residence. None was addressed to the Plaintiff's counsel, and none was copied to the Plaintiff's counsel.

25.  Each of the five letters is a "communication" within the meaning of 15 U.S.C. § 1692a(2), in that each conveyed information regarding a debt directly to the Plaintiff.

26.  Each of the five letters is identical in template, format, and signatory, differing only as to date and payment deadline. It is clear that even if automatically generated, Credit Control failed to oversee or supervise staff or any automated system which it was using to stop generation of the letters as required by law.

5

27.    None of the five letters advised the Plaintiff that Credit Control's further efforts to collect the Account were being terminated; none notified the Plaintiff that Credit Control may invoke specified remedies ordinarily invoked by Credit Control; and none notified the Plaintiff that Credit Control intended to invoke a specified remedy. To the contrary, each of the five letters was an affirmative solicitation for payment of the Account.

**Pre-Suit Demand**

28.    On June 12, 2026, undersigned counsel transmitted to Credit Control, by certified mail, return receipt requested, and by first-class mail, at both of the addresses to which the HELPS letters had been directed, a written demand identifying the violations described herein with the goal of ceasing the illegal collection attempts and resolving the claims herein. [i] ,

29.    Despite Credit Control's clear receipt of the June 12, 2026 letters, this communication has gone  unanswered.

**Harm to the Plaintiff**

30.    As a direct and proximate result of Credit Control's conduct, the Plaintiff has suffered actual damages, including anxiety, worry, aggravation, distress, fear of continued and escalating collection activity, and concern that his federally protected retirement income was at risk, notwithstanding that he had retained counsel and had three times caused written demand to be made that the contact stop.

31.    The Plaintiff has further been required to expend time and effort, and to retain and consult with counsel, in order to protect his rights against a course of conduct that should have ceased upon Credit Control's receipt of the first written notice of representation.

## CLAIMS AND REQUESTS FOR RELIEF

## COUNTS 1 THROUGH 5

**Five Violations of 15 U.S.C. § 1692c(a)(2) and 12 C.F.R. § 1006.6(b)(2)**

**(Communication with a Consumer Known to Be Represented by an Attorney)**

32.    The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

33. Section 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

34. Regulation F, 12 C.F.R. § 1006.6(b)(2), imposes a parallel prohibition on communications with consumers represented by counsel.

35. Credit Control knew, as of no later than February 5, 2026, that the Plaintiff was represented by an attorney with respect to the Account, and knew or could readily ascertain that attorney's name and address, which were stated on the face of each HELPS letter.

36. Neither statutory exception applies: the Plaintiff's counsel neither consented to direct communication nor failed to respond within a reasonable period of time to any communication from Credit Control.

37. Each of the following communications constitutes a separate, discrete, and actionable violation of 15 U.S.C. § 1692c(a)(2) and 12 C.F.R. § 1006.6(b)(2):

   a. The March 8, 2026 letter (Count 1);

   b. The March 24, 2026 letter (Count 2);

   c. The April 14, 2026 letter (Count 3);

   d. The May 5, 2026 letter (Count 4); and

   e. The May 26, 2026 letter (Count 5).

38. Credit Control has therefore violated 15 U.S.C. § 1692c(a)(2) as to the Plaintiff at least five separate times.

**COUNTS 6 THROUGH 10**

**Five Violations of 15 U.S.C. § 1692c(c) and 12 C.F.R. § 1006.6(c)**

**(Communication After Written Notice to Cease Communication)**

39. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

40. Section 1692c(c) of the FDCPA provides that if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, subject only to three narrow exceptions: to advise the consumer that the debt collector's further efforts are being terminated; to notify the consumer that the debt collector may invoke specified remedies ordinarily invoked by the debt collector; or, where applicable, to notify the consumer that the debt collector intends to invoke a specified remedy.

41. Regulation F, 12 C.F.R. § 1006.6(c), imposes a parallel prohibition.

42. An attorney may invoke the protections of § 1692c(c) in writing on the consumer's behalf.

43. The HELPS letters dated February 5, 2026, March 16, 2026, and April 10, 2026 each constituted written notification, made on the Plaintiff's behalf, that the Plaintiff wished Credit Control to cease further communication with him. The March 16, 2026 and April 10, 2026 letters did so in express "cease and desist all communication" terms.

44. Each of Credit Control's five subsequent letters was a solicitation for payment. None advised that collection efforts were being terminated, none identified any remedy that Credit Control may invoke, and none stated an intention to invoke any specified remedy. None therefore falls within any exception set forth in § 1692c(c).

45. Each of the following communications constitutes a separate, discrete, and actionable violation of 15 U.S.C. § 1692c(c) and 12 C.F.R. § 1006.6(c):

    a.    The March 8, 2026 letter (Count 6);

    b.    The March 24, 2026 letter (Count 7);

8

    c.      The April 14, 2026 letter (Count 8);

    d.      The May 5, 2026 letter (Count 9); and

    e.      The May 26, 2026 letter (Count 10).

46. In the alternative, and at a minimum, the four letters mailed after the express written cease-and-desist demand of March 16, 2026 — those dated March 24, April 14, May 5, and May 26, 2026 — each violate 15 U.S.C. § 1692c(c).

## COUNT 11

### Violation of 15 U.S.C. § 1692d

### (Harassment, Oppression, and Abuse)

47. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

48. Section 1692d of the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

49. The natural consequence of mailing five successive demands for payment, at intervals of roughly two to three weeks, to a consumer who had three times caused written demand to be made that all contact cease, is to harass, oppress, and abuse that consumer.

50. Credit Control's conduct is aggravated by its written notice that the Plaintiff is a senior citizen whose sole income consists of federally protected retirement benefits, and by its persistence in the face of each successive notice.

51. Credit Control has thereby violated 15 U.S.C. § 1692d.

## DAMAGES

52. The Plaintiff adopts by reference and realleges the statements in the other paragraphs of this Complaint.

53. The bona fide error defense set forth in 15 U.S.C. § 1692k(c) is unavailable to Credit Control. That defense requires proof that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Three written notices, directed to two separate Credit Control addresses over a period of more than two months and followed by five identically templated violative mailings, establish that whatever procedures Credit Control maintains either were not followed or are not reasonably adapted to identify and honor attorney-representation notices and written cease demands.

54. The Plaintiff is entitled to recover his actual damages sustained as a result of Credit Control's failures to comply with the Fair Debt Collection Practices Act, as provided by 15 U.S.C. § 1692k(a)(1).

55. Each of the factors set forth in 15 U.S.C. § 1692k(b)(1) favors the maximum award of additional damages:

   a. Frequency of noncompliance: five separate violative communications within a period of seventy-nine (79) days;

   b. Persistence of noncompliance: the mailings continued after each of three successive written notices, including two express cease-and-desist demands, and the final mailing issued forty-six (46) days after the last notice;

   c. Nature of the noncompliance: direct contact with a represented senior consumer whose sole income is federally exempt, in disregard of the core protective provisions of the statute; and

   d. Extent to which the noncompliance was intentional: Credit Control, a sophisticated nationwide debt collector, received actual written notice on three occasions and continued mailing identical demands notwithstanding.

56. The Plaintiff is entitled to recover additional damages from Credit Control for its failures to comply with the Fair Debt Collection Practices Act with respect to the Plaintiff, as provided by 15 U.S.C. § 1692k(a)(2)(A), and seeks the maximum such award.

10

57.	To the extent the Court determines that additional damages under 15 U.S.C. § 1692k(a)(2)(A) are available per violation, the Plaintiff seeks additional damages in the amount of $10,000.00, being $1,000.00 for each of the ten violations pleaded in Counts 1 through 10.

58.	The Plaintiff hereby reserves the right, if it is held that his additional damages are limited to $1,000.00 per action rather than $1,000.00 per violation, to prosecute only the first count for violation of the Fair Debt Collection Practices Act in this action and to sever and prosecute by means of independent actions the other counts for violation of the Fair Debt Collection Practices Act.

59.	The Plaintiff is entitled to recover the costs of this action, together with a reasonable attorney's fee, as provided by 15 U.S.C. § 1692k(a)(3).

60.	Because Credit Control has never confirmed that the Account has been closed, that no further collection activity will occur, or that the Account will not be sold, assigned, or transferred to another collector, the Plaintiff remains at risk of continued violations and is entitled to declaratory and injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Nicholas J. Cokas, respectfully prays that this Court grant relief as follows:

a.	A determination and declaration that Credit Control, LLC violated 15 U.S.C. § 1692c(a)(2) and 12 C.F.R. § 1006.6(b)(2) on five separate occasions;

b.	A determination and declaration that Credit Control, LLC violated 15 U.S.C. § 1692c(c) and 12 C.F.R. § 1006.6(c) on five separate occasions;

c.	A determination and declaration that Credit Control, LLC violated 15 U.S.C. § 1692d;

d.	A determination and declaration that Credit Control, LLC violated 15 U.S.C. § 1692e and § 1692e(10);

11

e.      An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

f.      An award of the maximum additional damages permitted by 15 U.S.C. § 1692k(a)(2)(A);

g.      An award of the costs of this action, together with a reasonable attorney's fee, pursuant to 15 U.S.C. § 1692k(a)(3);

h.      A permanent injunction requiring Credit Control, LLC to cease all communication with the Plaintiff, directly and indirectly, and prohibiting Credit Control, LLC from selling, assigning, or transferring the Account to any other collector, and requiring the deletion of any credit reporting tradeline furnished by Credit Control, LLC with respect to the Account;

i.      Such other and further relief as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

NICHOLAS J. COKAS

By:/s/ Malissa Lambert Giles
Counsel for Plaintiff

Malissa Lambert Giles, Esq.
Virginia State Bar No. 33955
GILES & LAMBERT, P.C.
P.O. Box 2780
Roanoke, Virginia 24001
(540) 981-9000
mgiles@gileslambert.com
Counsel for Plaintiff

12

**EXHIBIT LIST**

Exhibit A:  HELPS Law Group, P.C. letter to Credit Control, LLC dated February 5, 2026

Exhibit B:  HELPS Law Group, P.C. letter to Credit Control, LLC dated March 16, 2026

Exhibit C:  HELPS Law Group, P.C. letter to Credit Control, LLC dated April 10, 2026

Exhibit D:  Credit Control, LLC letter to Nicholas J. Cokas dated March 8, 2026

Exhibit E:  Credit Control, LLC letter to Nicholas J. Cokas dated March 24, 2026

Exhibit F:  Credit Control, LLC letter to Nicholas J. Cokas dated April 14, 2026

Exhibit G:  Credit Control, LLC letter to Nicholas J. Cokas dated May 5, 2026

Exhibit H:  Credit Control, LLC letter to Nicholas J. Cokas dated May 26, 2026

---

[i] The letter further placed Credit Control on notice of its obligation to preserve relevant documents and electronically stored information.